Morning, Your Honors. Ed Robbins. I'm the lawyer for the taxpayers. This case is about the taxpayer's right to a fair trial in tax court. We maintain he didn't get a fair trial and we're asking the court to remand the case to the tax court with instructions to follow the rules on expert witnesses. Now the tension here, if you want to find a good summary of it, is in the government's argument. Basically we say that they sprang a stealth expert on us at trial without the usual... What was her name, this person who testified? Helen Chan. Now, I thought Ms. Chan actually did the workup on the notice of deficiency. No. She didn't? No. She didn't. So I misread the record. The workup was done by somebody else. But Ms. Chan had nothing to do with after the criminal proceeding. After the criminal proceeding, she had lots to do with coming up with the numbers. The numbers, that's what I mean. She's the one that came up with the original numbers, correct? No? No. Let me give you the timeline, if I might. This is important. Starting with the government's argument, you can see this summarized on page three of my reply brief. Wait a minute. Just tell me, after the criminal trial, after the criminal matter, not trial, but the criminal proceedings, it was all agreed that there would be taxes, and they agreed to a fraudulent penalty and whatnot, but the amounts had to be determined. Yes. Correct? Yes. Okay. It goes back to the IRS, and somebody makes that determination. The determination had previously been made in the context of the criminal case. No, no, no. Just... After it went back after the criminal proceeding, and they came up with the new amounts, who did that? The numbers on the deficiency came from, ultimately, Helen Chan. Okay. She was building off of a fairly substantial effort that predated her involvement in the case. Right. A lot went into the criminal prosecution. Okay. But she came up with the numbers that were in that deficiency notice. The numbers on the notice of deficiency were put on there by Helen Chan. So I thought when she testified that what was happening was that she was relating how she went about coming up with that, those numbers. That was what the story was, yes. But if you look at the record, that is not what she did. When you say the story, you're talking about the argument on your unlimited motion? Yes, as well as the arguments made by the government in their papers. The theme from the government is, she's just talking about what she did on the statutory notice of deficiency. That's what the judge was talking about. That's what the government's talking about in their brief. That is false. Well, somebody had to explain to the tax court judge how they came up with the numbers. No, they don't in that context. With the net worth numbers. The numbers on the deficiency notice are presumptively correct. The government doesn't have to do anything. The taxpayer has the burden to rebut them. So you're telling me that the government just could have come into the tax court and said, here's the notice of deficiency, we rest? Yes. And they could prevail? Yes. News to me. No, that's the way it works. But here they elected to rebut what we put on with their own data. But let me get back to my original point, because this is, I don't I went way beyond talking about what she did to come up with the numbers on the deficiency notice, and we can see it. We've got the proof right here on the record. Keep in mind, I hope everyone has caught this, that the government's theme is all she did was talk about what she did to come up with the numbers on the notice of deficiency. That was it. Nothing else. Not true. Well, that's the way the tax judge related it. He didn't get it. It's not true. I'm sorry. Look at the record. Let me find the cites for you. Volume 1, excerpt of record, page 24, 25, and 41. Volume 1, excerpts of record, page 24, 25, and 21. And here it is. Page 24. Helen Chan's deficiency number for 1998, $64,000. She changed it during the course of time after the notice of deficiency. Right. She kept grinding the number, kept working on the number, and at trial she comes up with a different number, $73,000. For 1998, same thing. Her deficiency number, $74,000. At trial, she grinds it and grinds it and grinds it and comes up with $43,000. 2000, deficiency number she came up with was $99,000. She grinds that one during trial, comes up with $171,000. Well, that's, those arguments aren't particularly related to, you know, whether or not Dalbert was violated, right? Those arguments show that she is operating as an expert during her trial testimony. So what are you saying, they would have been permissible if she were a qualified expert? Absolutely. All right, if you say that then, and she wasn't qualified, do you have to show prejudice? Well, I hope I've shown that. And the prejudice is what? The prejudice is seen when you look at what happens in a typical tax court case. If I may give a 30-second summary. I thought the prejudice would be if she's not qualified. No, the prejudice is the taxpayer is deprived of a series of very important procedural things that he could take advantage of to help him in his case, just like any other case with an expert. In tax court, you have, they're set out in my brief, you have rules that are required to be followed. There has to be a disclosure early on of who the expert is. So 702. Yeah, 702. Applies in tax court, right? Yes, yes. Procedural. That's my point. That's the whole point of this case. I know that, but the point I'm getting at, so that was violated, so don't you have to show prejudice? The prejudice is manifest by the fact that we did not get that notice. We did not have an opportunity. No, no, we're just speaking in circles. You didn't get the notice, so what's the prejudice? We did not have an opportunity to depose the expert. I know, but what would the, you know, a deposition have, going to the qualifications have shown? Well, when you depose them, you go not only to qualifications. You go to the substance of their analysis. We did not have an opportunity, a pretrial opportunity to depose that expert on the substance of her analysis. We did not have an opportunity to get a written report, which is huge. Tax court is unique in that regard as far as I know. In that respect, does the tax court have a similar rule like the district court on the, you know, disclosure of expert reports? This one, it's different in that the expert report is required to be written, it's required to be disclosed within 30 days of trial, and most importantly, it becomes the direct testimony of the expert. It just goes in, boom, that's their direct testimony, then the taxpayer gets an opportunity to cross, or if the taxpayer puts the expert report in, which happens often, then the government gets the opportunity. We didn't get to do that. If there was no written report, does that mean then, in this case, the person you claim is an expert, is Chang. Yes. In effect, testified to who would have otherwise been in a written report of which you would have had prior disclosure. Is that right? That's right. The testimony came in through oral testimony in court as opposed to by a written report? The testimony came in at trial. That's what I mean. In substance, I would assume, had she been forced to write a report, it would have tracked what she ultimately said, so yes. All right. Now, obviously, you had an opportunity to cross-examine, but I suppose your position would be, well, that wasn't sufficient because we didn't have a chance to depose the expert about it, or, you know, look at the conclusions before the trial and that kind of stuff, right? Yes, exactly. There's no discovery in tax court? There's a discovery, yes. I mean, did you get her working papers before? Oh, we had all the papers. You had all her papers, so you knew what she had to say. I didn't know what she was going to say. No, no, no, no. But you had her records, the way that when she worked up the numbers. We had the raw data, yes. Yeah. So there was discovery, change of... Yeah. Could you have just taken her deposition if you'd wanted to? I could have that I'd known she was going to be an expert. They swore she wasn't going to be an expert. She's just a summary witness. Well, you knew she was going to be testifying. I had no reason to think... You knew she had done the numbers. I had no reason to think they would go back on their word. And there's nothing... Did you have to get the tax court judge's approval to take her deposition? Would I have had to? I could have done it by stipulation. You can do it. It's not a big deal. Does the government usually cooperate in that matter? Yeah. But there's no reason to do it. She's not an expert. Why do I want to talk to her? She's not a witness. She has no historical connection to the case at all. You didn't think at all that they would call her as a witness? Yeah, they said they were going to call her as a summary witness, a 1006 summary witness, which she clearly was not. Clearly she... So I assume at a certain point, maybe before she was even called, early in her testimony, you made some kind of objection, right? Right? Yes, sir. Okay. Now, what was the response to that objection? Overruled. Well, as the court, I'm sure, knows it's kind of tricky when you have an ongoing objection not to be a nuisance and every two minutes jump up and down. But I think I crossed the nuisance line. I was pretty much of a nuisance objecting at least periodically because it was totally improper as far as I was concerned. I'm entitled to the rules being followed. We didn't get it. And I want to, I can beat this case in a fair fight. I want to have a shot at it. All right. I understand your position on that. May it please the court, Karen Gregory for the Commissioner of Internal Revenue. As is obvious in this case, Frank Berth pled guilty to intentionally under-reporting his income. Well, you don't have to go into that. We really want to know this dispute about the expert. That's what we're interested in. We know the background. Right. Let me explain tax court procedure. The tax court has repeatedly... First of all, there was an unlimited motion, right? Pardon, pardon me? There was an unlimited motion by the taxpayer on this issue, right? Which the tax court denied. The tax court denied it as moot because the tax court was not admitting the evidence as opinion testimony. All right. And in fact, did that turn out to be true, did it not admit any opinions? I'm sorry, I'm having difficulty... I say, did that turn out to be true, that the tax court judge did not permit this witness to testify to any opinions? Whenever, during her testimony, there was a legitimate objection. That she was straying into opinion territory that the tax court reminded her. And basically, the critical thing to understand here is that there's a difference... So the answer is yes or no? Did she testify to opinions or not? No, she did not. She explained what she did. And the tax court can take it or leave it. The tax court is itself an expert on tax law. And the distinction between a criminal tax prosecution and a deficiency proceeding in the tax court is that specialized knowledge, which is the category of testimony referred to in Section 701 of the Federal Rules for Lay Testimony, you cannot stray into specialized knowledge that's within Rule 702, which is the expert testimony. But specialized knowledge vis-a-vis a criminal tax jury is a completely different thing than specialized knowledge in the specialized tax court, where the judges themselves have specialized knowledge. And Judge Lauber's credentials are impeccable. They're available publicly on the tax court's website. He knows very well the difference between the criminal rules and the civil tax rules because he was the tax assistant to the Solicitor General of the United States. And in that capacity, he covered both civil and criminal issues. And then after that, he was Deputy Solicitor General of the United States. He has a great deal of knowledge about tax law. So the baseline of specialized knowledge... It couldn't have been prejudicial because the tax court judge is such an expert. He couldn't have... Nothing could have confused him, is that what you're saying, or something like that? The tax court judges have been reversed on occasion. But my point is that the baseline for specialized knowledge in the tax court is way above the heads of a civil jury. And when the... What are you arguing? Are you saying there was no prejudice? Are you saying there could have been no prejudice even if the ruling was erroneous? What are you arguing? I'm arguing that when the judge admits testimony for a limited purpose, which Judge Lauber did here, he admitted the revenue agent's testimony purely to explain what she did, not for the truth, not for an expert opinion on whether the methodology was correct, but just presented the information so that the tax court could then consider that information and the taxpayer's evidence, weigh the evidence, make findings of fact and conclusions of law. And... So she got up there and told how she calculated the numbers, right? She told how she calculated the numbers and all of that information... And given his specialized knowledge, he could either believe her or disbelieve her, right? Right. The tax court opines on whether or not the net worth method was appropriate, whether or not the dash method was appropriate. Right. That's all within the province of the tax court to decide. She presented her estimate, and the tax court can take it or leave it. The tax court can accept the taxpayer's number or the commissioner's number or come up with something in between based on... Is that right? I think that would be a risky litigation strategy, quite frankly. And in this case, because of... That's not the question. Could you have presented it? Pardon me? Could you have presented it and rested? Well, in unreported income cases, actually, this court has held that the commissioner has an initial burden of production that there was income unreported from some source. So there's that additional factor in this particular case. So in an unreported income case, the commissioner has to present something because of that specialized burden of production. And in this case, when the commissioner... But you had to present some evidence to show that you were relying on the net worth and that this was a proper case to rely on the net worth method. In the commissioner's view, the tax court may disagree. Right. But that was your position. That's how you calculated the deficiency. And you said we did that because there's undisclosed income. Right. Exactly. And so therefore, the only way we can figure this out is to use this method that is recognized in the case law, the net worth method, the DASH method. And you have to explain why you did that. Right. I mean, is a net worth method reflected on the deficiency notice? Not on its face. Right. But all of the information, the spreadsheets, the summaries, the foundational documents were provided at least a year and a half, possibly two years in advance of the trial. To the taxpayer, to her lawyer? To the taxpayer representative. And he filed a status report in July of 2011, which is more than two years before the trial, indicated that he had received a huge amount of information. What exactly was there, I don't know. But all of that was disclosed. So all of the math was there. Yes, there were a lot of numbers. Yes, it's a slog to sort of follow the numbers through the layers of summaries. But that was all disclosed. And the stipulation process, the task court has held, is the bedrock of its system. And the task court stipulation rule, 91, uses the word requires the parties to, it's sort of a settlement procedure, to get together and figure out what they can agree on and then to narrow the issues so that only the legitimately disputed items are then tried before the court. So all of this information was provided well in advance. How far ahead of trial was the Taxpayers' Council informed that this witness would testify on the net worth method? Roughly. Would testify on the, well, she was identified as a witness in a pretrial statement. And I have to apologize, my memory is the trial was postponed. But just her name was on the witness list, is that what you're saying? Nothing else about it? Her, I'm sorry, my memory is not clear on this. I do know that the trial was postponed, so there were a couple of sets of pretrial statements. So what I don't remember is in the earlier pretrial statement, if her identity was disclosed. Well, here's my question, though, here's where I'm getting at. At some point, taxpayers were informed pretrial that this witness would be testifying to the government's net worth position or not? Yes, that was revealed that she would be the representative of the commissioner to explain the deficiency number. But it was implicit in that or maybe explicit that, or maybe everybody knows this, in this kind of case the only way to get there is by the net worth method? Well, the commissioner determined that because of a lack of record keeping that the net worth method. I don't care what the commissioner determined, I want to know what you told the taxpayer. What she told the, I don't know because it's not in the record. And I'm leery of going beyond that. So it's possible maybe the taxpayer was never informed that this witness would be testifying to the commissioner's net worth calculations and bottom line? I can tell you generally what happens when there's a deficiency determination and that is sent out, there's an administrative procedure that can be followed where the taxpayer, or if he's represented by counsel, the taxpayer's representative, can communicate directly with the revenue agent to at that level try to resolve the issues. And then the case could go to the IRS Office of Appeals, which is another sort of settlement resolution opportunity. And then the tax court trial is sort of the taxpayer's put up or shut up moment to present his own evidence, because all of this evidence, you have to remember, is within his personal knowledge. Well, no. The evidence of how the commissioner gets to the net worth calculation is not within the taxpayer's personal knowledge. I mean, I think that's the primary point of this whole appeal, that they were never told about that. Right? Isn't that true? That's not within the taxpayer's knowledge. Taxpayer can, sure, can do his or her own calculation on net worth, but obviously can come up with a different number. I stand corrected, Your Honor. The taxpayer has personal knowledge of his actual income during the period. And what happens in the tax court is the commissioner presents his best estimate of the information he's going to get. I don't care what happens in tax court. And the taxpayer then presents resentment. I don't care what happens in tax court after trial. I'm interested in what happens before trial. How much is the taxpayer told about, you know, the commissioner's net worth calculations before you get into court? All of those spreadsheets, which show the allocation, show the treatment of everything, were produced to the taxpayer. When you say the treatment, you mean it shows the commissioner's net worth calculations? Yes. In other words, you know, $67,000 the next year, $85,000 the year after, so forth, that's all was produced? Yes. There was no surprise spreadsheets presented at the trial. And that's produced approximately how long before trial? In this case, possibly as long as two years before this trial, definitely within about a year and a half before. And are those disclosed figures, you know, substantially what this expert testified to in court at the trial? Yes. And where there were changes, there were some minor changes which were identified at the very beginning of the trial, and all of the changes were based on refinements from the evidence. Now, is it your position that testifying to the net worth calculation is not expert opinion? Not in the tax court, because this is a very straightforward case. Can you give me a case that says something like that? Well, the Grunderscher case, I'm sorry if I'm not pronouncing it correctly, says that when a revenue agent, and that's a tax court opinion, the revenue agent is simply explaining his or her methodology, that that's not expert testimony. Did this person change, I mean, just an ordinary revenue agent? In the tax court, yes. I mean, that's an employee. No, is she employed by the IRS as a revenue agent? Yes, she is an IRS employee who was assigned. Oh, she's just a revenue agent. Is that what she is? Yes, she's a revenue agent. But she has no other job description? Well, I mean, her job description is in the record at the beginning of her testimony, but what her role was in this particular case was she was assigned after the conclusion of the criminal case, and there was a plea agreement in which Frankworth agreed to cooperate with the IRS in the civil examination of his tax liabilities, not to challenge the evidence gathered in the criminal investigation, not to challenge its use in the civil investigation. She was assigned at that point to do the math for the commissioner. We had an admission that the returns were incorrect, that income from White Sands was not reported accurately, and Frankworth was on notice at that time that a civil exam is proceeding. What's not on the record in this case in the civil area is what happened between, say, the 30-day letter period, which is a notice to the taxpayer that even precedes the notice of deficiency, that alerts the taxpayer that this is coming and it's an opportunity to sort of resolve things before you even get to the notice of deficiency point, and then standard procedure. There are other levels of administrative opportunities to appeal within the IRS. All right, you're running out of time. Let me ask you a question. Give me just a yes or no if you want or more. In your view, is this person, what's her name, Chang, is she an expert witness to whom the Dalbert gatekeeping requirement applies? No, she was not. What she did was very straightforward. There are a lot of numbers to add up. I was able to follow it very easily. All right, thank you. Thank you. To some of the points, we stipulated $200,000 in unreported income. We put on evidence that that was what he didn't report, and that was obviously rejected, but we didn't just sit there and say there was nothing.  Secondly, there was a question from one of your honors about whether any of the objections were sustained. I can't remember a single one. If it was, it was collateral. It wasn't what we're talking about here. They were all overruled, all of them. Also, the net worth, well, I guess we're past that, I think. You've got to be an expert to do a net worth method, or I'm sorry. There's nobody in this room that can do one without special training. I can't even do it. I've been working on this stuff for 38 years. Well, the revenue agents receive that special training. They know how to do it. Yeah. Helen Chan could do it if she were here. That's because she's an expert in net worth. That doesn't necessarily mean she's always an expert when she's testifying. She is in this case. I think that's pretty apparent. The question is. Or even if she wasn't, they didn't follow the procedures that there was any prejudice here, because apparently she had all the knowledge and skill and whatnot. The prejudice comes from not being able. Well, first of all, they represented to us, to answer, again, one of the questions. They, the government, represented to us that she was not testifying as an expert. That was quite clear. You've heard that again right here. She's not an expert. Don't worry about it. Okay. That's a big deal. That is a huge deal. And so I didn't. She's not an expert. That's fine. What's she going to do? Put in summary schedules? No problem. I'll probably stipulate to most of them anyway. Who cares? So how are they going to get their numbers in? That's my question. And the answer is they can't. They cannot get that in without an expert. Do you want to take one second to answer Judge Pius's question? Oh, I'm sorry. I said do you want to take one second to answer Judge Pius's question about the prejudice? Well, again, the prejudice is I was deprived of advance notice. I was deprived of the identity and substance of her testimony. I was deprived of her identified as an expert. I was deprived of the opportunity to depose her as an expert. But most importantly, I didn't get my hands on her written report, which was her direct testimony or would have been her direct testimony, a minimum of 30 days before trial. Imagine how useful that would be. Have 30 days to prepare your cross-examination. Have 30 days to have your own expert. Well, you know, what I don't hear you saying is that I would have hired my own expert based on all of this, and my own expert would have done this, this, and this. Absolutely. If I'm faced with an expert, you have to fire me. No, but you haven't said that at all. You have to fire me. You say, well, I would have had the availability of her deposition. I would have been able to have her report. I'm saying, yeah. But you've never said. I've been listening to you very carefully all morning, and you've never said, well, I'm going to go out. I would have gone out. I've taken that information. I would have gone out, and I would have hired my own expert, and my own expert would have said this, this, and this about her testimony. I don't know specifically whether I would have done that because I haven't seen her. Well, you haven't said you would do it. But having seen her report, I may well have done that clearly. That's one of the reasons you want to see the report. Now, if the report is so lame I can rip it up on my own, then I wouldn't need to do that. Mr. Robbins, let me ask you a related question. I don't want to take too much time, but I know you've been a tax lawyer for many, many years and even worked for the government at one time. Yes, sir. So you must have seen a lot of net worth cases. Yes. Civil and criminal. Now, my question is, is it customary in a net worth case for the government to furnish a written report on a net worth case of their revenue agent? No. Then if it's not customary, why is it? I can answer that. Yeah. Because it's too much trouble and they get away with it. Well, this must have been raised before. Never. I mean, this meeting your point. Never. No? That's why I'm here. Okay. Thank you. Thank you. Thank you. The case just argued will be submitted. The court will take a brief recess before the final case in the morning.
judges: Reinhardt, Tashima, Paez